UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



RLI Insurance Company,

        Plaintiff,

–v–

Pro-Metal Construction Inc., et al.,

        Defendants.

18-cv-2762 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Before the Court are Plaintiff's motion for partial summary judgment, Dkt. No. 39, and Defendants' cross–motion for partial summary judgment, Dkt. No. 50. For the reasons set forth below, Plaintiff's motion is granted, and Defendants' motion is denied.

I.    Background

   A. Factual Background

The following facts are undisputed except if specifically noted. This action arises from the contractual relationship between Plaintiff RLI Insurance Company ("RLI") and Defendants Pro-Metal Construction, Inc. ("Pro-Metal") and its founders, Aglaia Sopikiotis Meris, and Elias Meris.

Pro-Metal is a general contractor and construction management company. *See* Dkt. No. 54 ¶ 2. In May 2007, Pro-Metal and RLI formed an agreement under which RLI would issue surety bonds to Pro-Metal as required for Pro-Metal to enter certain construction contracts. *See* Dkt. No. 42 ¶¶ 1–2; Dkt No. 55 ¶ 6. In exchange, Pro-Metal and the individual Defendants executed an Agreement of Indemnity in favor of RLI. Dkt. No. 42 at ¶ 2; Dkt. No. 55 ¶ 6. In

1

relevant part, the text of the Agreement of Indemnity is as follows:

> [Pro-Metal] and the [individual Defendants] jointly and severally shall exonerate, indemnify, and keep indemnified [RLI] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which [RLI] may sustain and incur (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of [Pro-Metal] and [the individual Defendants] to perform or comply with the covenants and conditions of this Agreement or (3) in enforcing an of the covenants and conditions of this Agreement.
>
> Payment by reason of the aforesaid causes shall be made to [RLI] by the [Pro-Metal] and [the individual Defendants] as soon as liability exists or is asserted against [RLI], whether or not [RLI] shall have made any payment therefore. Such payment shall be equal to the amount of the reserve set by [RLI] or equal to such amounts as [RLI], and its sole judgement, deems sufficient to protect it from loss or potential loss. In the event of any payment by [RLI], [Pro-Metal] and [the individual Defendants] further agree that in any accounting between [RLI], [Pro-Metal] and [the individual Defendants], [RLI] shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by [RLI] shall be prima facie evidence of the fact and amount of the liability to [RLI].

Dkt. No. 42 ¶ 4; Dkt. No. 55 ¶ 7.

In 2011, Pro-Metal entered into a subcontract to provide roofing and exterior renovation work for STV Construction, Inc. ("STV"), which had been hired by the New York City Housing Authority ("NYCHA") to perform and manage public improvement projects. Dkt. No. 55 ¶ 11, 15. Pursuant to the agreement between the parties, RLI issued performance and payment bonds on behalf of Pro-Metal in favor of STV and the NYCHA, each in the amount of $10,244,785. Dkt. No. 42 ¶ 5; Dkt. No. 55 ¶ 19.

In March 2012, two workers on the STV/Pro-Metal project filed a claim with the NYCHA against STV and Pro-Metal alleging various wage and hour violations. Dkt. No. 42 ¶ 6; Dkt. No. 55 ¶¶ 22–24. The NYCHA investigated the claims and concluded in April 2015 that

"97 workers of STV and its subcontractor, Pro-Metal were underpaid the prevailing wage by $644,681.71 for their work as Unskilled Laborers and Roofers." Dkt. No. 41, Ex. A. The NYCHA later revised its determination of the underpayment amount to $45,000. *Id.*, Ex. B.

In September 2012, prior to the completion of the NYCHA investigation, the two workers filed a putative class action against Pro-Metal in New York state court seeking damages for the alleged non-payment of prevailing wages and overtime. *See* Dkt. No. 42 ¶ 9; Dkt. No. 55 ¶ 35. The class also seeks recovery from RLI, as the holder of the payment bond. *See* Dkt. No. 42 ¶ 10; Dkt. No. 55 ¶ 36. In April 2017, the state court granted the workers' motion to certify a class of persons who were employed by Pro-Metal on the STV/Pro-Metal public works project. *See* Dkt. No. 42 ¶¶ 9, 11; Dkt. No. 55 ¶¶ 35, 38. The state court also denied Pro-Metal's motion to dismiss the case as barred by collateral estoppel due to the NYCHA decision concerning wage underpayment. Dkt. No. 42 ¶ 12; Dkt. No. 55 ¶¶ 39–41. The Appellate Division, First Department affirmed the state court's denial of the motion to dismiss and denied permission to appeal to the Court of Appeals. Dkt. No. 42 ¶ 13; Dkt. No. 55 ¶¶ 4; Dkt. No. 62 at 1–2. In its reply brief, Pro-Metal states that it intends to seek permission to appeal directly from the Court of Appeals. Dkt. No. 62 at 1–2.

On March 1, 2018, in response to a request from RLI's counsel, class counsel in the state court action provided RLI with a damage demand via email. Dkt. No. 41, Ex. 5. *See* Dkt. No. 41, Ex. 5. In relevant part, the email states:

> Plaintiffs[] seek damages in the current amount of $3,953,273.03 in alleged unpaid prevailing wages and supplemental benefits, plus interest of $1,523,294.35 through February 1, 2018. This claim is based collectively on numerous communications with class members, information contained in Pro-metal's Certified Payroll Reports ("CPR's"), sign-in logs and payroll checks.

*Id.* By letter dated March 5, 2018, RLI demanded that Pro-Metal and the individual Defendants

3

deposit collateral in the amount of the class plaintiffs' damage demand—$3,953,273.03. *See* Dkt. No. 52, Ex. 3. Pro-Metal and the individual Defendants objected to this amount as unreasonable and offered to furnish collateral of $794,681.71, contingent on RLI agreeing to tender defense to Pro-Metal's chosen counsel. *See* Dkt. No. 52, Ex. 4. RLI rejected this offer. Dkt. No. 55 ¶ 47.

### B. Procedural Background

Plaintiff filed this surety action against Defendants on March 28, 2018, seeking to enforce the Indemnity Agreement, including the provision requiring Defendants to deposit collateral with Plaintiff. Dkt. No. 1. Defendants filed an answer and a counterclaim, requesting declaratory judgment as to the amount of collateral that is reasonable. Dkt. No. 20. On August 2, 2018, Plaintiff moved for summary judgment on its claim for specific performance of the collateral provision. Dkt. No. 30. Defendants filed a cross motion for partial summary judgment on September 21, 2018. Dkt. No. 50. Thereafter, this action was transferred to the undersigned.

## II. Legal Standard

A court may not grant a motion for summary judgment unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Summary judgment is appropriate when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Smith v. County of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

4

*Corp.*, 475 U.S. 574, 587 (1986)). "[I]n making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995).

If both sides move for summary judgment, a court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011).

### III. Discussion

Under New York contract law,[1] sureties may seek enforcement of collateral security provisions in summary judgment proceedings even if the surety has yet to accrue any loss. *See Am. Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 302 (2d Cir. 1989) (concluding that a surety was entitled to partial summary judgment on the issue of its entitlement to collateral security where the parties agreed that the contract was valid). Specific enforcement of collateral security agreements is necessary "to protect the surety's bargain under an indemnity agreement." *Safeco Ins. Co. v. DeMatos Enters.*, No. 02-CV-2899 (BWK), 2003 U.S. Dist. LEXIS 7651 at *14 (E.D. Pa. Apr. 11, 2003); *see also National Sur. Corp. v. Titan Const. Corp.*, 26 N.Y.S.2d. 227, 230 (N.Y. Sup. Ct. 1940), *aff'd*, 260 A.D. 911 (N.Y. App. Div. 1940) ("The damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate."). Unlike an award of indemnification, the reserve furnished is "merely collateral

---

[1] The parties agree that New York law applies in this diversity action. *See* Dkt No. 43 at 10; Dkt. No. 51 at 12. "[W]here the parties agree that New York law controls, this is sufficient to establish choice of law." *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

5

security held in trust by the insurer that must be repaid to the extent that damages are reduced or not awarded." *BIB Constr. Co. v. Fireman's Ins. Co.*, 625 N.Y.S.2d 550, 552 (N.Y. App. Div. 1995). In essence, whether and to what extent a party is entitled to collateral is simply a question of contract. *See United Bonding Ins. Co. v. Stein*, 273 F. Supp. 929, 929 (E.D. Pa. 1967) (An action to enforce a promise to place funds in reserve "is simply one for the specific performance of a contractual agreement."); *see also BIB Constr.*, 625 N.Y.S.2d at 552 (A party who has agreed to a collateral security provision must "abide by this term of the contract.").

### A. Reasonable Collateral

Under the terms of the parties' agreement, payment "equal to the amount of the reserve set by [RLI] or equal to such amounts as [RLI], and its sole judgement, deems sufficient to protect it from loss or potential loss" shall be made by Pro-Metal and the individual Defendants to [RLI] "as soon as liability exists or is asserted against the [RLI]." Dkt. No. 42 ¶ 4; Dkt. No. 55 ¶ 7. Defendants do not dispute that the agreement is binding and requires them to furnish RLI with collateral security due to RLI's potential liability in the class action, nor do they contest this Court's ability to enforce specific performance of the agreement. *See* Dkt. No. 51 at 2. The entire conflict presently before the Court on the parties' cross motions amounts to the limited issue of whether the $3,953,273.03 collateral demanded by RLI is reasonable. RLI argues "that a surety's collateral demand in the same sum that is claimed against the surety's bond is reasonable as a matter of law." Dkt. No. 43 at 1. Defendants assert that class plaintiffs' demand of $3,953,273.03 plus interest is unfounded, and therefore that it is not reasonable for RLI to demand that amount as collateral. Dkt. No. 51 at 15. Defendants further maintain that a reasonable sum would be $644,681.71—"the amount of underpayment originally determined by the [NYCHA]." Dkt. No. 51 at 2.

If, as here, a party has agreed to furnish security in the amount determined by the surety, courts will require the party to comply with the surety's demand "[s]o long as the sum demanded is reasonable." *BIB Constr.*, 625 N.Y.S.2d at 552. Thus, though the terms of the contract provide that RLI can determine in "its sole discretion," the amount of collateral required to protect it from loss or potential loss, the amount demanded by RLI must not be unreasonable. *See Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (N.Y. 1995) ("Where the contract contemplates the exercise of discretion, [the covenant of good faith and fair dealing] includes a promise not to act arbitrarily or irrationally in exercising that discretion."); *see also Utica Mut. Ins. Co. v. Cardet Const. Co. Inc.*, 114 A.D. 3d 847, 849 (N.Y. App. Div. 2014) (finding that the amount of collateral security demanded by surety was reasonable).

Thus, the central question is whether RLI's collateral demand is reasonable. Courts applying New York law have stated that as a general matter, "[a] demand for collateral is reasonable if the sum demanded is commensurate with the claims made against the surety or the amount sought by a third party in litigation." *Star Ins. Co. v. Champion Constr. Servs. Corp.*, No. 13 CV 3635 (ARR)(RML), 2014 U.S. Dist. LEXIS 113942, at *9 (E.D.N.Y. July 29, 2014). Here, RLI has asked Defendants to provide security equal to the amount demanded in the class action, excluding interest. On its face, this appears to be an amount "commensurate with...the amount sought by a third party in litigation." *Id.*; *see also* WEBSTER'S COLLEGIATE DICTIONARY 231 (10th ed. 1994) (defining "commensurate" as "equal in measure or extent").

Of course, the class may not succeed in its lawsuit against Pro-Metal and RLI: they may ultimately recover only a fraction of what they assert that they are owed, or nothing at all. Indeed, Defendants vehemently deny that class plaintiffs' claims are meritorious, and the NYCHA investigation revealed a much smaller amount of underpayment. *See* Dkt. No. 51 at

7

15–20. Nonetheless, the question before the Court is whether RLI behaved reasonably in demanding $3,953,273.03 as collateral, not whether this amount is an accurate tabulation of underpayment to class plaintiffs. *Cf. BIB Const. Co.*, 214 A.D. 2d at 523–24 (noting that a surety was required to fulfill its obligations to an obligee "regardless of its own belief in the correctness" of the third-party demand). Defendants concede that their efforts to dismiss the class claims as barred by collateral estoppel due to the NYCHA determination have been unsuccessful in state court, Dkt. No. 55 ¶¶ 40–42, and point to nothing that would definitely preclude liability in the class action.

Moreover, even if the class is not awarded the total amount demanded, RLI could still face liability for a lesser amount plus interest and losses for expenditures during litigation. Per the terms of the parties' agreement, RLI is entitled to demand the amount it "deems sufficient to protect it from loss or potential loss," subject only to the general reasonableness requirement. Dkt. No. 42 ¶ 4; Dkt. No. 55 ¶ 7. Even if the Court were convinced that class plaintiffs' demand is inflated, it is not permitted to rewrite the terms of the parties' agreement to include a requirement that the collateral amount be no greater than *probable* loss. *See Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004) ("[W]hen parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms.") (quoting *W.W.W. Assoc. v. Giancontieri*, 566 N.E.2d 639, 565 (N.Y. 2001). In the event that the collateral provided exceeds RLI's final losses, Defendants will be entitled to the return of the difference. *See Am. Motorists Ins. Co.*, 876 F.2d at 300. Given that is it "reasonable for the amount of security to be based on asserted claims," the Court concludes that the amount demanded here is reasonable. *Colonial Sur. Co. v. Eastland Constr., Inc.*, 77 A.D.3d 581, 582 (N.Y. App. Div. 2010).

The Court need not reach the broad question of whether a collateral request in the amount demanded in an underlying suit is *per se* reasonable in all circumstances, as RLI argues. There may be cases in which recovery of the amount demanded is, on the face of the record, virtually impossible. This is not one of those cases; though the amount demanded by the class is certainly disputed, it is not unsupportable. *See* Dkt. No. 60, Ex. 4 (responding to Pro-Metal's criticisms of class counsel's damages calculations). Even drawing every inference in Defendants' favor, they have not pointed to any facts that would permit an inference that recovery in the amount demanded is definitively barred.

Defendants also point out that other courts applying the same standard have found that collateral amounts of less than the total third-party demands were reasonable. *See, e.g., Utica Mut. Ins. Co. v. Cardet Constr. Co.*, 114 A.D.3d 847, 849 (N.Y. App. Div. 2014) (finding reasonable a demand of $251,688.80 in collateral security in light of third party claims against the surety in excess of $1 million). But the cases cited by Defendants are of limited applicability—in none did the surety make a demand for a higher amount of collateral. *Cf. Centennial Ins. Co. v. 4-A Gen. Contracting Corp.*, 13 Misc. 3d 1217(A), 2006 WL 2829790, at *3 (N.Y. Sup. Ct. 2006) (limiting collateral "at this time" to the amount specifically demanded by the surety because the agreement required defendants to furnish collateral security only "upon plaintiff's demand").

For these reasons, even viewing all evidence in the light most favorable to Defendants, Plaintiff's demand for collateral is reasonable, and its motion for partial summary judgment is granted. Defendants' motion for summary judgment on their declaratory judgment claim is therefore denied.

### B. Rule 54(b) Certification

RLI has requested the entry of final judgment on its claim for the deposit of collateral. *See* Dkt. No. 43 at 16–20. Defendants do not contest that it may be appropriate for the Court to enter partial final judgment pursuant to Fed. R. Civ. P. 54(b). *See* Dkt. No. 51 at 2.

Rule 54(b) provides that a court "may direct entry of a final judgment as to one or more, but fewer than all, claims [in an action presenting more than one claim for relief] if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Rule 54(b) orders "should not be entered routinely or as a courtesy or accommodation to counsel," but rather only "as an instrument for the improved administration of justice." *Campbell v. Westmoreland Farm, Inc.*, 403 F.2d 939, 942 (2d Cir. 1968) (quoting *Panichella v. Pennsylvania Railroad Co.*, 252 F.2d 452, 455 (3d Cir. 1958)). In general, "if the same or closely related issues remain to be litigated," a court should not enter final judgment as to only some claims. *National Bank of Washington v. Dolgov*, 853 F.2d 57, 58 (2d Cir.1988) (per curiam) (quoting *Cullen v. Margiotta*, 811 F.2d 698, 710 (2d Cir. 1987)).

The Court finds that its entry of summary judgment in favor of RLI on its claim for specific performance of the collateral deposit payment is final for purposes of Rule 54(b). Given that the very purpose of this type of agreement is "to provide plaintiff with collateral security before it is required to discharge any potential…liability," to deny RLI final judgment as to the collateral until the claims for indemnification are adjudicated would deprive it of the benefit of its bargain. *Am. Motorists Ins. Co. v. Penn. Beads Corp.*, 983 F. Supp. 437, 440 (S.D.N.Y. 1997). Though the issues remaining to be litigated also concern the Defendants' contractual obligations to RLI, a claim for specific performance of a collateral security provision is distinct from a claim for indemnification. *See Am. Motorists Ins. Co.*, 876 F.2d at 299. As a result, the Court's decision on this claim will not be revised later in the litigation, nor will an appellate

court "have to decide the same issues more than once even if there [are] subsequent appeals." *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10 (1980). This is particularly true in light of the limited scope of the parties' disagreement on the claim for collateral security. In addition to the hardship to RLI that would result from delay, failing to certify final judgments on claims for collateral more generally could have the inefficient result of encouraging parties to file such claims separately. For these reasons, the Court directs the entry of final judgment on RLI's claim for collateral.

**IV.    Conclusion**

For the foregoing reasons, RLI's motion is GRANTED, and Defendants' motion is DENIED. Pursuant to Fed. R. Civ. P. 54 (b), the Clerk of the Court is directed to enter judgment in favor of RLI as to its third claim for relief. This resolves Docket Numbers 39 and 50.

Within two weeks of the date of this Order, the parties shall meet and confer regarding settlement, file a letter with the Court providing a status update, and propose dates for a scheduling conference.

SO ORDERED.

Dated: March ___, 2019
       New York, New York

_____
ALISON J. NATHAN
United States District Judge